UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JANICE WASHINGTON,
    Plaintiff,

v.

HONEYWELL INTERNATIONAL,
INC., and NORTH SAFETY
PRODUCTS LLC,
    Defendants.

C.A. No. 14-223-JJM-LDA

## MEMORANDUM AND ORDER

Plaintiff Janice Washington[1] filed suit against Defendants Honeywell International, Inc. and North Safety Products LLC, for disability discrimination and retaliation in violation of the Family and Medical Leave Act ("FMLA"); the Rhode Island Parental and Family Medical Leave Act (RIPFMLA"); the Civil Rights of People with Disabilities Act ("CRPD"); the Rhode Island Fair Employment Practices Act ("RIFEPA"); and the Rhode Island Civil Rights Act of 1990 ("RICRA"). Before the Court is Defendants' Motion for Summary Judgment (ECF No. 40) and Ms. Washington's Cross-Motion for Partial Summary Judgment. (ECF No. 44). For reasons set forth below, the Court DENIES both motions.

---

[1] Another Plaintiff in this case, Kerry N. Anthony, dismissed her claims. ECF No. 13.

I. Background and Facts

Ms. Washington worked for Honeywell in various positions from 1999 until Honeywell terminated her on June 2, 2011. In approximately 2002, Ms. Washington began working as a customer service representative. In 2009, Ms. Washington's doctor, Dr. Suzanne McLaughlin, diagnosed her with hypertension, stress, and anxiety. The following year, Ms. Washington notified her direct supervisor Kimberly Richardson and the customer service manager Sandy Silva of her disabilities and requested time off from work to receive medical treatment. Over the next year, specifically in June 2010, February 2011, and April 2011, Ms. Washington applied for and received intermittent FMLA leave. Ms. Washington's intermittent leave allowed her to attend medical appointments up to three hours per day, one day a week. During Ms. Washington's final April intermittent leave, she requested and Honeywell granted her continuous medical leave from March 31, 2011 through April 11, 2011. After her continuous leave ended, Ms. Washington's previously-approved intermittent FMLA continued until May 30, 2011.

During this period of FMLA leave, Honeywell disciplined Ms. Washington for excessive tardiness in violation of Honeywell's Site Attendance Policy ("SAP"). The SAP details the steps that Honeywell can take to discipline a worker for tardiness, from the "verbal notice" stage to "termination." Ms. Silva testified that Ms. Washington had a history of tardiness and yet, Honeywell never cited or disciplined her for violating the SAP until after she received FMLA leave. For example, on January 31, 2011, Honeywell issued Ms. Washington a "counseling" for

arriving to work a few minutes late on five separate occasions that month. On or about March 28, 2011, while she was on approved intermittent leave, Honeywell skipped several SAP steps and issued Ms. Washington a "Final Warning" for being tardy on seven occasions in February and March. Because it deemed Ms. Washington's absences to be "general abusive unauthorized time away," Honeywell asserts that the SAP's progressive steps can be accelerated. Although the SAP permits acceleration, Ms. Washington was the only employee in Honeywell's customer service department terminated for violating the SAP, even though time records show that other employees were tardy.[2] Moreover, Ms. Washington denies that she was late multiple times per month, claiming that the appearance of tardiness was due to issues with the new eCharge time recording system,[3] defects with her badge, or approved medical appointments. She did testify, however, that whenever she noticed an issue with eCharge's accuracy, she would notify Ms. Richardson who corrected the punch times.

---

[2] Ms. Washington created a spreadsheet from documents Honeywell produced, specifically employee time records, in support of her claims for retaliation and disability discrimination. *See* ECF No. 45-27 (Exhibit X) (time sheets indicating all customer service employees' punch-in and out times during the time in question). Honeywell argues that this document is inadmissible because Ms. Washington misinterpreted the documents in compiling it. Without ruling on the spreadsheet's admissibility now, the Court notes that the Federal Rules provide for summaries of voluminous writings when they are accurate and all parties have the source documents. *See* Fed. R. Evid. 1006; *see also United States v. Appolon*, 695 F.3d 44, 61 (1st Cir. 2012).

[3] The eCharge system is a swipe card system that Honeywell employees used to clock in and out of work.

Ms. Washington also claims that Ms. Richardson made multiple discriminatory comments regarding her disabilities during this period. Ms. Washington alleged that after she learned of her disabilities, Ms. Richardson commented at work "don't stroke out on me." In addition, Ms. Richardson questioned why Ms. Washington needed a second MRI after recently having one.

After her intermittent leave expired, Ms. Washington alleges that she requested an extension of her intermittent leave, but there does not appear to be any documentation in the record and Honeywell denies receiving any such request. There is some testimony that Honeywell had a policy of reaching out to employees on leave or returning from leave to see if they need additional accommodations, but Honeywell disputes that this proactivity binds it. Three days after Ms. Washington's intermittent FMLA medical leave ended, and without initiating a dialogue with Ms. Washington to see if she needed further accommodation per Honeywell policy, Honeywell terminated her employment.

Ms. Washington applied for unemployment benefits and notified the Rhode Island Department of Labor and Training that she was available for full time work. After failing to obtain work after over one year, Ms. Washington applied for Social Security Disability Insurance ("SSDI"). Ms. Washington testified that the only reason that she applied for disability was that she did not think that another employer would accommodate her medical issues. She further testified that she believed that she could still perform her previous job, but would not return because of how Honeywell treated her. Honeywell's customer service manager, Ms. Silva, also

4

testified that Ms. Washington was able to perform all the essential functions of her job. Based on all the relevant testimony provided during Ms. Washington's SSDI hearing, an Administrative Law Judge ("ALJ") found that Ms. Washington was not disabled and denied her SSDI application. Ms. Washington then commenced suit against Honeywell.

## II. Standard of Review

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material only if it possesses the capacity to sway the outcome of the litigation under the applicable law." *Vineberg v. Bissonnette*, 548 F.3d 50, 56 (1st Cir. 2008) (internal quotation marks omitted). "A genuine issue exists where a 'reasonable jury could resolve the point in favor of the nonmoving party.'" *Meuser v. Fed. Express Corp.*, 564 F.3d 507, 515 (1st Cir. 2009) (quoting *Suárez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000)). When there are cross motions for summary judgment, the Court must "evaluate each motion independently and determine 'whether either of the parties deserves judgment as a matter of law on facts that are not disputed.'" *Matusevich v. Middlesex Mut. Assur. Co.*, 782 F.3d 56, 59 (1st Cir. 2015) (quoting *Barnes v. Fleet Nat'l Bank, N.A.*, 370 F.3d 164, 170 (1st Cir. 2004)). Further, in viewing each motion separately, the Court "draw[s] all inferences in favor of the nonmoving party." *Cooper v. D'Amore*, 881 F.3d 247, 249–50 (1st Cir. 2018) (quoting *Fadili v. Deutsche Bank Nat'l Tr. Co.*, 772 F.3d 951, 953 (1st Cir. 2014)).

5

III. Discussion

A. The FMLA Claim

The Court will begin its discussion with Ms. Washington's FMLA[4] claim as it encompasses much of the same analysis as the other claims. Congress enacted the FMLA, recognizing that there are times when individuals are incapable of performing their work duties when they are sick. *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998) (citing *Price v. City of Fort Wayne*, 117 F.3d 1022, 1024 (7th Cir. 1997)); *see* 29 U.S.C. § 2601(b)(2)-(3) (purpose of the Act is to "entitle employees to take reasonable leave for medical reasons" "in a manner that accommodates the legitimate interests of employers.").

FMLA has two entitlements. First, a qualified employee is entitled to up to twelve weeks of unpaid leave per year when she has "a serious health condition that makes the employee unable to perform the functions of the position." 29 U.S.C. § 2612(a)(1)(D). The FMLA also provides for "intermittent" leave, which allows an employee to take such leave intermittently "when medically necessary" to attend medical appointments. 29 U.S.C. § 2612(b)(1). Second, the employee is entitled to return to the same position with equivalent pay following a qualified absence. 29 U.S.C. § 2614(a)(1)(A)-(B). These protections ensure that employers do not

---

[4] Ms. Washington also filed a RIPFMLA claim, which provides the same statutory protections as an FMLA claim. *See Kenney v. Bethany Home of Rhode Island*, C.A. No. 09-CV-289-ML, 2011 WL 1770537, at *2 n. 3 (D.R.I. May 9, 2011) ("[T]he analysis of the elements of the RIPFMLA and the FMLA claims is the same, and, to the extent the state statute is not preempted, the Court's review of the federal claims addresses the state statute as well."). Therefore, this Court's summary judgment decision applies to both claims.

6

discriminate against employees who have used FMLA leave, and cannot "use the taking of FMLA leave as a negative factor in employment actions, such as ... disciplinary actions." 29 C.F.R. § 825.220(c). And the FMLA prohibits both interference and retaliation; to assert an interference claim, a plaintiff asserts that "the employer denied [] her substantive rights under the FMLA" and for a retaliation claim, she must assert "that the employer retaliated against [] her for having exercised or attempted to exercise those rights." *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 331 (1st Cir. 2005). Here, Ms. Washington has alleged both an interference and a retaliation claim.

### 1. FMLA Interference

For her interference claim, Ms. Washington "must establish that: (1) that she is an 'eligible employee' under FMLA; (2) that she worked for an employer under FMLA; (3) that she was entitled to leave under FMLA; (4) that she gave adequate notice to her employer of her intention to take leave; and (5) that her employer denied her benefits to which she was entitled by FMLA." *Reilly v. Cox Enterprises, Inc.*, No. CA 13-785S, 2014 WL 4473772, at *4 (D.R.I. Apr. 16, 2014) (citing *Surprise v. Innovation Grp., Inc. / First Notice Sys., Inc.*, 925 F. Supp. 2d 134, 145 (D. Mass. 2013)). To meet her burden in an interference with substantive rights claim, Ms. Washington must only prove that she was entitled to the disputed leave; no showing as to employer intent is required. *Colburn*, 429 F.3d at 331.

Ms. Washington was on an intermittent FMLA leave to allow her to attend medical appointments up to three hours per day one day a week from February 2011

through May 30, 2011. On March 31, 2011, Ms. Washington applied for and received continuous FMLA that lasted until April 11, 2011, she then returned to intermittent leave, which Honeywell had approved through May 30, 2011. Three days after Ms. Washington's intermittent FMLA ended, Honeywell terminated her employment. In light of these undisputed facts, there is no question that: Ms. Washington was eligible for and entitled to FMLA leave, Honeywell was a covered employer, and she was entitled to leave; effectively satisfying the first three elements of an FMLA interference claim. Therefore, the Court's analysis turns on whether Ms. Washington gave Honeywell notice that she needed additional accommodations and whether Honeywell denied her these benefits when it fired her.

Regarding the remaining elements, Ms. Washington argues that she asked Honeywell for additional accommodations and a continuation of her intermittent leave after it ended, but Honeywell terminated her instead. However, Honeywell disputes this and argues that it could not interfere with or deny an entitlement to benefits that she failed to request. Citing to deposition testimony, Ms. Washington argues that she did not necessarily need to notify Honeywell because it had a policy to initiate dialogue with employees to see if they needed further accommodations, but it failed to do so. Because material facts are in dispute on this claim, the Court DENIES both Defendants' Motion for Summary Judgment and Ms. Washington's Cross-Motion for Summary Judgment on this claim.

## 2. FMLA Retaliation

Unlike an interference claim, an employer's motive is relevant in a retaliation case. *Hodgens*, 144 F.3d at 160. Ms. Washington must show that Honeywell terminated her in retaliation for taking medical leave rather than terminated her for inappropriate behavior. *See id.*

"[W]hen there is no direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies to claims that an employee was discriminated against for availing himself of FMLA-protected rights." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803-04 (1973)). Under this framework, the employee has the initial burden of establishing a prima facie case of retaliation. *Kosereis v. Rhode Island*, 331 F.3d 207, 212 (1st Cir. 2003). The First Circuit Court of Appeals has "described the prima facie case as a small showing that is not onerous and is easily made." *Id.* at 213 (internal quotations and citations omitted). Once the employee does so, the burden shifts to the employer to articulate a legitimate non-retaliatory reason for its adverse employment action. *Id.* If the employer provides such a reason, then the burden returns to the employee to show that the employer's stated reason was a pretext for retaliation. *Id.*

### a. Prima Facie Case for Retaliation

In order to make a prima facie case of retaliation, Ms. Washington must show that "1) [she] had availed herself of a protected right under the FMLA; 2) [she] was adversely affected by an employment decision; and 3) there was a causal connection between the protected conduct and the adverse employment action." *Orta-Castro v.*

9

*Merck, Sharp & Dohme Quimica P.R., Inc.*, 447 F.3d 105, 113–14 (1st Cir. 2006). The undisputed facts show that FMLA protected Ms. Washington and that Honeywell fired her from her position. Furthermore, although Ms. Washington was tardy many times in her years in Honeywell's employ, Honeywell never disciplined her for violating the SAP prior to her using FMLA leave and there is evidence, though Honeywell disputes it, that Ms. Richardson made negative comments about Ms. Washington's health. Taking these facts together, the Court finds that Ms. Washington meets the very light burden of establishing a prima facie case for retaliation.

### b. Legitimate Nondiscriminatory Reason for Adverse Employment Action

With the prima facie case established, the burden shifts to Honeywell to offer a legitimate, nondiscriminatory reason for terminating Ms. Washington. Honeywell asserts that it fired Ms. Washington for excessive tardiness in violation of its SAP. Honeywell cites twelve or more occasions of tardiness from early January 2011 through her termination in June. While Ms. Washington disputes the fact that she was tardy in some of these instances, for the sake of this motion, the Court finds that firing an employee for tardiness is a legitimate reason for termination.

### c. Pretext

Because Honeywell has provided a legitimate reason for termination, the burden returns to Ms. Washington to show that the stated reason for termination was a pretext for retaliation. "An employee can prove pretext by showing the employer meted out more lenient treatment to similarly situated employees ... who

did not engage in protected activity." *Colburn*, 429 F.3d at 337 (citing *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 835 (8th Cir. 2002)). There is evidence in the record that Ms. Washington, despite frequent tardiness, not only was not disciplined for being late prior to using FMLA, but also that no other employee who was similarly tardy[5] (and in some case, tardier) from October 2010 through December 2012 was ever disciplined. Ms. Washington's punch-in times, her interpretation of the employee time card data as well as the timesheets are material to her retaliation claim and whether Honeywell has a legitimate, nondiscriminatory reason for firing her. Because the parties dispute each other's accounting and interpretation of Ms. Washington's hours and similarly situated employee's hours, the Court finds that neither motion should be granted on Ms. Washington's FMLA retaliation claim.

B. CRPD, RIFEPA, and RICRA

Ms. Washington alleges that Honeywell discriminated against her based on her disability in violation of the RIFEPA, the CRPD, and the RICRA.[6] The Court's

---

[5] Ms. Washington disputes that she was actually tardy on all of those dates, arguing that her punch-in times were not accurate due to eCharge system failures, her badge was defective, and/or her lateness was excused due to approved medical appointments. However, it is undisputed that where Ms. Washington immediately noticed errors in her time cards, she raised them with Ms. Richardson who made adjustments and/or corrections to the system.

[6] The RIFEPA prohibits an employer from discriminating against an employee based on a "disability" or refusing to "reasonably accommodate an employee's ... disability unless the employer can demonstrate that the accommodation would pose a hardship on the employer's program ...." R.I. Gen. Laws § 28–5–7(1). Similarly, the CRPD provides that "no otherwise qualified person with a disability shall, solely on the basis of disability, who with reasonable accommodation and with no major cost can perform the essential functions of the job in question, be subjected to discrimination in employment ...." R.I. Gen. Laws § 42–87–2. Lastly, the RICRA provides that "[a]ll persons within the state, regardless of ... disability ... have, except

11

analysis of these three statutory disability claims fall under a single analytical framework derived from case law based on the Americans with Disability Act ("ADA"). *See Kriegel v. State of Rhode Island, Dep't of Corr.*, 266 F. Supp. 2d 288, 296 (D.R.I. 2003) (when disability claims are made under both federal and state law, courts analysis is under the corresponding federal ADA statute). As with her FMLA claims, Ms. Washington must first establish a prima facie case for disability discrimination in accordance with the *McDonnell Douglas* burden-shifting framework. *See Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 104 (1st Cir. 2005) (applying the *McDonnell Douglas* framework for a disability discrimination claim arising under the ADA). As previously discussed, once a prima facie case is confirmed, the Court turns to Honeywell's adverse employment action and whether the given reason for firing Ms. Washington was a pretext for her disability.

a. Prima Facie Case

In making her prima facie case, Ms. Washington must show that "(1) she was disabled within the meaning of the ADA; (2) she was qualified to perform the essential functions of the job, either with or without reasonable accommodation; and (3) the employer took an adverse employment action against her because of the alleged disability." *Colón–Fontánez v. Municipality of San Juan*, 660 F.3d 17, 32 (1st Cir. 2011). Dr. Suzanne McLaughlin, Ms. Washington's doctor, testified that she suffered from hypertension, stress, and anxiety, and has received treatment for these issues

---

as is otherwise provided or permitted by law, the same rights to ... the full and equal benefit of all laws ...." R.I. Gen. Laws § 42–112–1.

since 2009 and all relevant times relevant to the matter. Because Honeywell does not dispute Dr. McLaughlin's testimony, this Court finds that Ms. Washington has met the first element.

Next, it is undisputed that Ms. Washington presented evidence from Dr. McLaughlin and her supervisors, Ms. Silva and Ms. Richardson, that she could perform the essential functions of her job with or without reasonable accommodation. However, Honeywell contends that Ms. Washington fails to meet the second element regardless of those opinions because she applied for SSDI, an admission that she was disabled and unable to work at all. Honeywell argues that because Ms. Washington stated in her SSDI application that she was unable to work, no reasonable juror would conclude that Ms. Washington could perform the essential functions of her job with or without reasonable accommodations.

In the face of this contradiction, Ms. Washington's claim will fail unless she can proffer a sufficient explanation to resolve the disparity. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). Ms. Washington explains that she applied for SSDI benefits over a year after her termination date because, after a year of applying and failing to obtain gainful employment, she thought that no employer would hire her because she needed accommodations. Furthermore, Ms. Washington stated that she "never would have left" Honeywell and the only reason she could not return to Honeywell is the "sour taste" left in her mouth from Honeywell's mistreatment. The Court is satisfied that Ms. Washington provided a sufficient

explanation for the discrepancy between filing an ADA claim and an SSDI claim. Thus, this Court finds that Ms. Washington meets the second element.

Finally, Ms. Washington must show that Honeywell took adverse employment action against her because of the alleged disability. Based on the Court's analysis of her FMLA retaliation claim, i.e. the temporal proximity of the adverse employment action to her taking leave, Ms. Richardson's alleged comments about Ms. Washington's health, and the undisputed fact that she was never disciplined for violating the SAP prior to her taking FMLA leave, Ms. Washington has satisfied the third element and made her prima facie case.[7]

### b. Legitimate Nondiscriminatory Reason for Adverse Employment Action

Moving on in the *McDonnell Douglas* framework, Honeywell must provide a legitimate reason for its adverse employment action; Honeywell gives excessive tardiness as a reason and offers her time records as proof. The Court previously concluded that Honeywell meets its burden here.

### c. Pretext

The remainder of the Court's analysis of Ms. Washington's disability claims follows its analysis of her FMLA retaliation claim. Because there are disputed issues of fact regarding the accounting and interpretation of Ms. Washington's and similarly situated employees' hours, and whether Honeywell employees made negative

---

[7] *See* Section A(2)(a) of this analysis.

comments about her health and disabilities, the Court declines to grant either motion regarding Ms. Washington's RIFEPA, CRPD, and/or RICRA claims.

IV. Conclusion

The First Circuit recently observed quite correctly, "[w]hen it comes to evaluating summary judgment motions, judges simply aren't meant to be factfinders. In what should come as a surprise to no one, then, courts should never be in the business of granting such motions when the case's material facts are genuinely disputed by the parties." *Rivera-Rivera v. Medina & Medina, Inc.*, No. 17-1191, 2018 WL 3640821, at *1 (1st Cir. Aug. 1, 2018). A jury is needed here to make findings as to the disputed facts.

For the foregoing reasons, the Court DENIES both Defendants' Motion for Summary Judgment (ECF No. 40) and Plaintiff's Cross-Motion for Partial Summary Judgment (ECF No. 44).

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

August 23, 2018